**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

| | |
|---|---|
| **JESSICA MONIQUE SAMUELS HARDY** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO.: 3:19-CV-153** **(CHIEF JUDGE GROH)** |
| **ANDREW SAUL,** **Commissioner of Social Security,** | |
| **Defendant**. | |

## REPORT AND RECOMMENDATION RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED

### I.   INTRODUCTION

On September 17, 2019, Plaintiff Jessica Monique Samuels, proceeding *pro se*, ("Plaintiff"), filed a Complaint (ECF No. 1) along with a Motion for Leave to Proceed in forma pauperis (ECF No. 2), in this Court to obtain judicial review of the final decision of Defendant Andrew Saul, Commissioner of Social Security ("Commissioner" or "Defendant"), pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). (Compl., ECF No. 1). On December 9, 2019, the Commissioner, by counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed an answer and the administrative record of the proceedings.  (Answer, ECF No. 9; Admin. R., ECF No. 10).

On December 10, 2019, the undersigned entered an Order (ECF No. 12) Directing Filing of Briefs Pursuant to LR Civ P 9.02. On January 2, 2020, the Court received a notification indicating the undersigned's Order (ECF No. 12) had been returned as undeliverable. The Court further received a Letter (ECF No. 14) from Plaintiff indicating she had relocated and changed her

address. On the same day, the Clerk of Court sent Plaintiff a Letter (ECF No. 15) informing Plaintiff of the need to complete a court approved form titled **"Notice of Change of Address And/Or Contact Information For Pro Se Litigants"** and attaching the same. The Clerk directed Plaintiff to complete the appropriate form within 14 days from the date of the notice. On January 24, 2020, the undersigned entered an Order (ECF No. 16) directing Plaintiff to show cause as to why she had not yet complied with the directive to complete and submit the appropriate notice of change of address supplied by the Clerk. The Court received Plaintiff's appropriately completed notice of change of address (ECF No. 17) on January 27, 2020.

Because the Defendant's Answer and the Administrative Record had been served to Plaintiff's old address, the undersigned entered an Order (ECF No. 18) directing Defendant to serve their Answer and the Administrative Record on Plaintiff at her updated address. The undersigned further entered an Amended Order (ECF No. 19) Directing the Filing of Briefs Pursuant to LR Civ P 9.02 on January 28, 2020.

On March 5, 2020, and March 25, 2020, Plaintiff and the Commissioner filed their respective Motions for Summary Judgment.  (Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 25; Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 28).  Following review of the motions by the parties and the administrative record, the undersigned Magistrate Judge now issues this Report and Recommendation to the District Judge.

## II.   PROCEDURAL HISTORY

On February 16, 2016, Plaintiff protectively filed her application[1] under Title II of the Social Security Act for a period of disability and disability insurance benefits ("DIB"). (ECF No.

---

[1] Plaintiff filed prior applications for Title II and Title XVI benefits on December 21, 2011 and December 11, 2011 respectively. That application was denied initially, upon reconsideration, and in a hearing decision by an Administrative Law Judge on July 28, 2014. The Appeals Counsel affirmed the decision on October 21, 2015. (R. at 9).

10-6 at 8; R. at 264). On June 15, 2016, Plaintiff further filed an application under Title XVI of the Social Security Act for Supplemental Security Income ("SSI") (R. at 9). Both of Plaintiff's applications alleged disability that began on December 4, 2012. (R. at 9).  At the hearing held before the Administrative Law Judge on March 19, 2018, Plaintiff amended her alleged onset date to July 29, 2014. (R. at 9). Plaintiff's earnings record shows that she acquired sufficient quarters of coverage to remain insured through September 30, 2016; therefore, Plaintiff must establish disability on or before this date. (R. at 10).  This claim was initially denied on May 18, 2016 (R. at 140) and denied again upon reconsideration on December 13, 2016 (R. at 152).

On February 7, 2017, Plaintiff filed a written request for a hearing (R. at 166-169), which was held before United States Administrative Law Judge ("ALJ") Suzette Knight on March 19, 2018 in Richmond, Virginia. (R. at 32). Plaintiff, represented by counsel John Wilkinson, appeared and testified, as did Ruth Fast, an impartial vocational expert. (R. at 9). On September 10, 2018, the ALJ issued an unfavorable decision to Plaintiff, finding that she was not disabled within the meaning of the Social Security Act. (R. at 9-22). On July 16, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1-3).

## III.  BACKGROUND

### A.  Personal History

Plaintiff was born on July 6, 1985, and was thirty years old at the time she filed this SSI claim.[2] (R. at 264). She completed her high school education (R. at 42). Plaintiff's prior work experience included work as a cashier in the fast food industry, a receptionist, providing customer service in the retail industry, and a babysitter. (R. at 289; R. at 19). She was married at the time

---

[2] Plaintiff was twenty-six years of age at the time she filed her first application for SSI in 2011.

she filed her initial claim (R. at 264) and was divorced at the time of the administrative hearing. (R. at 41). She has one dependent child. (R. at 41). Plaintiff alleges disability based on scoliosis, depression, and kyphosis. (R. at 298). Plaintiff's Counsel at the hearing held before the ALJ on March 19, 2018, further alleged additional severe impairments of anxiety disorder and arthralgia of the right shoulder. (R. at 37-38).

**B.    Medical History**

**1.    Medical History Pre-Dating Amended Alleged Onset Date of July 29, 2014**

On August 12, 2012, Plaintiff was evaluated by Dr. Andre Eglevsky, Jr. at the Center for Orthopedics, Inc. in Fredericksburg, Virginia. (ECF No. 10-8 at 34; "Med. Rec. Pt. 1" R. at 392). It was noted that Plaintiff was experiencing pain in her lower back but that the pain "does not seem to travel anywhere and she has no numbness." Id. Plaintiff's height was listed at 5 feet 4 inches with a weight of 95 pounds and a BMI of 16.3 indicating she is underweight. Id. Upon examination, it was noted that Plaintiff's "right shoulder is higher than her left shoulder and she does have a curvature to the right in the upper part of her thoracic spine." Id. It was further noted that her "scapula is higher than her left and her right paravertebral musculature seems to be more prominent on the right than on the left." Id. The notes indicated that her "lower spine and her pelvis were normal." Id. The report further notes that Plaintiff had x-rays performed on April 12, 2012 of her lower back. Id. The x-rays showed "very minimal curvature to the left in the lumbar region." Id. The doctor's final diagnosis indicates "Scoliosis thoracic." Id.

A treatment record from Primary and Urgent Care in Stafford, Virginia dated September 19, 2012 indicates Plaintiff was treated by Dr. Shabana Qureshi. An assessment of Plaintiff's symptoms indicates back pain "most likely due to scoliosis." (ECF No. 10-8 at 7; "Med. Rec. Pt. 1" R. at 365).

A treatment record from Dr. Eglevsky dated February 13, 2013, indicates Plaintiff had recently had a baby that was seven- and one-half weeks early. (ECF No. 10-9 at 31; "Med. Rec. Pt. 2" R. at 462). The record further indicates Plaintiff had been in an automobile accident. Id. The record indicates Plaintiff was experiencing discomfort in her back. Id. The record indicates Plaintiff's "shoulder seems to be level and her pelvis seems to be level and she is well compensated, but she does have an obvious curve to the right with a prominence of the right ribcage." Id. The record further indicates no "bony abnormalities" in Plaintiff's recent x-rays. Id. The record further diagnoses Plaintiff with "a kyphosis" indicated by a lateral x-ray. Id.

A treatment record from Dr. Eglevsky dated April 17, 2013 indicates Plaintiff received an MRI on March 26, 2013. (R. at 462). The MRI did not reveal any spinal cord issues; however, it did reveal a "right curve" measured at "25 degrees." Id. The record indicates the back pain "she is experiencing appears to be related to muscular pain and the treatment is basically stretching and exercising." Id.

A follow-up with Dr. Nather Ansari at the Primary and Urgent Care in Stafford Virginia, dated for October 10, 2013, again noted Plaintiff's condition with thoracic scoliosis per the MRI performed on March 26, 2013. (R. at 366).

On February 11, 2014, Plaintiff reported for another follow-up with Dr. Nather Ansari. The treatment notes indicate "no anxiety and no depression." (R. at 446). It was indicated Plaintiff was experiencing sleep disturbances as a result of her daughter or if her back was hurting. Id. Plaintiff noted the pain being so extreme she may be in tears at various times. Id. It was again noted that Plaintiff was suffering from thoracolumbar spine scoliosis with a single concave curve to the right of "25 degrees." Id. at 447. It was further noted that Plaintiff was suffering from kyphosis. Id. at 445.

On March 13, 2014, Plaintiff was seen by Meredith Chappell, PA-C where she presented with back pain as a result of her scoliosis and kyphosis. Plaintiff's mood and affect was described as stable. (R. at 419).

On April 11, 2014, Plaintiff presented for a follow-up again with Meredith Chappell, PA-C. (R. at 415). Plaintiff's pain was rated as 6/10. Id. Plaintiff's functional limitations were described as fair with symptoms being exacerbated by standing. Id. The treatment notes that medication intended to alleviate her pain has been ineffective. Id.

On July 21, 2014, Plaintiff presented with tenderness in her back and associated pain experienced with her range of movement ("ROM"). Plaintiff's pain was described as not radiating down her legs. (R. at 409). Plaintiff did not have any numbness or weakness. Plaintiff's pain level was rated as 7/10. Id. Plaintiff's mood and affect were described as normal. (R. at 409).

### 2. Medical History Post-Dating Amended Alleged Onset Date of July 29, 2014

On November 12, 2014, Plaintiff visited with Jennifer O Riemer, PA-C , where her pain was rated as a "6/10." (R. at 439). Plaintiff described her symptoms as "unchanged." Id. Plaintiff's "mood and affect" were described as stable. It was noted that Plaintiff was suffering from "dextroscoliosis" and her back pain was not helped by any medication she has tried. Id. at 439-440. An MRI report and lumber spine was reviewed and noted as "unremarkable" with no noted "herniation, degeneration, or stenosis." Id. at 440. Plaintiff was prescribed "tramadol to treat her pain." Id.

On January 8, 2015, Plaintiff presented to Dr. Roohi Riazi for a follow up after "car accident" on "12/21." Plaintiff reported her back was still hurting. (R. at 451). The treatment note indicates Plaintiff presented for "MVC on 12/21/2014" when she went to the ER at Stafford Hospital. Id. Plaintiff's symptoms included scoliosis, back pain, thoracic area and lumbar area,

sprained right shoulder, a contusion in the left knee and it was noted that the "MVC" caused the listed symptoms. Id. at 451.

Plaintiff presented to the Sentara Pratt Medical Group Family Practice in Stafford, Virginia on October 21, 2015. (R. at 618). Plaintiff was experiencing back pain that had been worsening as a result of scoliosis and kyphosis. Id. The treatment note indicates "surgery would only be recommended if she had complications with her heart or lungs." Id. Plaintiff was experiencing some numbness and weakness associated with her back pain. Id. at 620. Plaintiff was oriented to time, place, person, and situation and her mood and affect were described as appropriate. Id. at 620.

Plaintiff presented again to Sentara Pratt Medical Group Family Practice in Stafford, Virginia on November 17, 2015 (R. at 625) as an initial visit for depression. Plaintiff reported functioning as very difficult. Id. Plaintiff had depressed mood, difficulty falling asleep, difficulty staying asleep, diminished interest or pleasure, fatigue, racing thoughts and restlessness but denied anxious/fearful thoughts. Id. Plaintiff's risk factors included relationship problems and her symptoms were noted to be aggravated by conflict or stress. It was noted that her depression was associated with chronic pain. Id. It was noted that Plaintiff was going through a divorce at that time. Id. A Patient Health Questionnaire (PHQ-9) was administered in which Plaintiff's score was listed as "10". Id. The severity/interpretation of Plaintiff's score is indicated as "moderate depression." Id. Plaintiff was prescribed Zoloft by Dr. Janice Soliven. Id. at 631.

A follow-up regarding Plaintiff's depression was conducted on December 8, 2015 (R. at 633). The note indicates Plaintiff's symptoms were "uncontrolled" and noted a continuation of initial symptoms and worsening of previously reported symptoms. Plaintiff was experiencing nausea and dizziness. Id. Plaintiff was prescribed fluoxetine. Id. at 637.

Plaintiff underwent a Consultative Examination with Advanced Medical Consultants in Herndon, Virginia on May 14, 2016. (R. at 537-540). Dr. Shawn Bryant conducted the exam. (R. at 540). Plaintiff presented with scoliosis and kyphosis. It was noted that Plaintiff's affect was depressed. Id. at 538. Plaintiff's right shoulder was noted to be two inches higher than her left shoulder. Id. Plaintiff had right-sided thoracolumbar kyphosis pronounced with bending. Id. Dr. Bryant noted that Plaintiff's "credibility was questionable as to the severity of her alleged complaint." Id. at 539. It was noted that Plaintiff had a history of "depression since 2015." Id. Dr. Bryant's functional assessment indicated Plaintiff could be expected to "sit and stand at least 30 minutes at a time, walk 20 minutes at a time, limitations due to back pain." Id. Dr. Bryant noted Plaintiff could be expected to "sit a total of six hours a day, stand and walk a total of three to four in an eight-hour day with normal breaks." Id. It was further noted that Plaintiff could be able "to lift and carry 15 pounds frequently and 30 pounds occasionally." Id. Plaintiff experienced some difficulties with her range of movement. Id.

Plaintiff presented to Campos Behavioral Health Services in Fredericksburg, Virginia on October 4, 2016 (R. at 543-546). It was noted that Plaintiff presented with a depressive mood and anxiety. (R. at 546). It was noted that Plaintiff was going through a divorce and experiencing chronic pain as a result of scoliosis. Id.

On May 15, 2017, Plaintiff established care with Barbara Ledford, LCSW at Central Virginia Health Services seeking therapy for the first time. (R. at 581). Plaintiff presented with depression causing significant limitation on her ability to function. Id. Exacerbating factors were listed for scoliosis and kyphosis. Id. Plaintiff continued to present to Ms. Ledford every two weeks for follow-up counseling and therapy regarding her depression, with records indicating follow-ups through February 7, 2018. (R. at 584-605).

8

### 3.  Medical Reports/Opinions

#### a.  *Disability Determination at the Initial Level*

On May 18, 2016, agency reviewer Eugene Noland, M.D., and disability adjudicator/examiner, Natasha Davis, reviewed Plaintiff's records and completed a physical residual functional capacity ("RFC") assessment. (R. at 98-102). Reviewer Noland found the following exertional limitations: Plaintiff could occasionally lift and/or carry (including upward pulling) 20 pounds; Plaintiff could frequently lift and/or carry (including upward pulling) 10 pounds; Plaintiff could stand and/or walk for a total of 4 hours; Plaintiff could sit about 6 hours in an eight (8) hour workday; and Plaintiff's capacity to push and/or pull (including operation of hand and/or foot controls) was unlimited, other than shown, for lift and/or carry. (R. at 98-99). As to postural limitations, Reviewer Noland found that Plaintiff could occasionally climb ramps and stairs; could never climb ladders, ropes, and scaffolds; and Plaintiff could occasionally balance, stoop, kneel, crouch, and crawl. (R. at 99). No manipulative, visual, or communicative limitations were found. Id. As to environmental limitations, Plaintiff could have unlimited exposure to extreme cold, extreme heat, wetness, humidity, noise, and vibration; Plaintiff should avoid concentrated exposure to hazards (machinery, heights, etc.); and should further avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilations, etc. (R. at 100).

On May 17, 2016, agency reviewer Richard Luck, Ph.D. reviewed Plaintiff's records and completed a psychiatric review technique ("PRT") assessment. (R. at 96-97). Reviewer Luck found no evidence that Plaintiff has any restriction on activities of daily living, difficulties in maintaining social functioning, difficulties maintaining concentration, persistence, or pace; nor any repeated episodes of decompensation, each of extended duration. (R. at 96-97). Reviewer Luck found the evidence did not indicate treatment or a mental impairment. (R at 97). Reviewer Luck

indicated Plaintiff reports history of depression as of 11/15 but was stable except for depressed effect. Id. Reviewer Luck concluded that, at this time, Plaintiff's mental condition was currently stable and nonsevere. Id.

### b.  *Disability Determination at the Reconsideration Level*

On December 13, 2016, agency reviewer Robert McGuffin, M.D. reviewed the prior RFC assessment. (R. at 129-131). Reviewer McGuffin found the following exertional limitations: Plaintiff could occasionally lift and/or carry (including upward pulling) 20 pounds; Plaintiff could frequently lift and/or carry (including upward pulling) 10 pounds; Plaintiff could stand and/or walk for a total of 6 hours in an 8-hour workday; Plaintiff could sit about 6 hours in an eight (8) hour workday; and Plaintiff's capacity to push and/or pull (including operation of hand and/or foot controls) was unlimited, other than shown, for lift and/or carry. (R. at 130). As to postural limitations, Reviewer McGuffin found that Plaintiff could frequently climb ramps and stairs; could occasionally climb ladders, ropes, and scaffolds; Plaintiff's balancing was found as unlimited; Plaintiff could frequently stoop (i.e., bending at the waist); Plaintiff could occasionally kneel; Plaintiff could frequently crouch; and Plaintiff could crawl occasionally. (R. at 130-131). Reviewer McGuffin found no manipulative, visual, communicative, or environmental limitations. (R. at 131). Accordingly, Reviewer McGuffin concluded that Plaintiff has a history of scoliosis with a mildly reduced ROM (range of movement). Reviewer McGuffin found that Plaintiff is capable of light work. (R. at 131).

On December 13, 2016, agency reviewer Julie Jennings, Ph.D. reviewed the prior PRT assessment. (R. at 127-128). Reviewer Jennings found Plaintiff's restriction of activities of daily living and difficulties in maintaining social functioning to be mild. (R. at 128). Reviewer Jennings also found Plaintiff's difficulties in maintaining concentration, persistence, or pace to be moderate.

Id. Reviewer Jennings further found no repeated episodes of decompensation, each of extended duration. Id. Reviewer Jennings listed Plaintiff's affective disorders and anxiety disorders as severe. (R. at 127). Reviewer Jennings explained that Plaintiff had been diagnosed with depression and anxiety which are treated with medication and therapy. (R. at 128).

Reviewer Jennings further completed a MRFC ("Mental Residual Functional Capacity Assessment") on December 13, 2016. (R. at 131-132). Reviewer Jennings found no evidence of specific understanding and memory capacities and/or limitations. (R. at 131). Reviewer Jennings found that Plaintiff did have sustained concentration and persistence limitations. Id. Reviewer Jennings rated Plaintiff's sustained concentration and persistence limitations as follows: Plaintiff's ability to carry out very short and simple instructions was found as not significantly limited; Plaintiff's ability to carry out detailed instructions was found as not significantly limited; Plaintiff's ability to maintain attention and concentration for extended periods was found as moderately limited; Plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, ability to sustain an ordinary routine without special supervision, ability to work in coordination with or in proximity to others without being distracted by them, and her ability to make simple work-related decisions were all found as not significantly limited. (R. at 131-132).

Reviewer Jennings found Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods to be moderately limited. (R. at 132). Reviewer Jennings explained that Plaintiff would be able to maintain concentration for two hour periods in order to complete an eight hour workday. She would be able to complete a normal work week and perform at a pace generally consistent with others. (R. at 132). Reviewer Jennings found

no evidence of significant social limitations and no evidence of significant adaptation limitations. Reviewer Jennings explained that Plaintiff has been diagnosed with anxiety and depression. She has a constricted affect at times. However, with treatment, Reviewer Jennings stated that Plaintiff has improved. Reviewer Jennings found that Plaintiff would be capable of at least simple-unskilled work. (R. at 132).

### C.    Testimonial Evidence

At the ALJ hearing held on March 19, 2018, in Richmond, Virginia, before Administrative Law Judge Suzette Knight, Plaintiff testified that she is divorced. (R. at 41). Plaintiff testified she has been divorced since November 7, 2016. Id. Plaintiff testified she has one dependent child, a daughter who was five years of age at the time of the ALJ hearing. Id. Plaintiff testified that she lives with her grandmother, mother, and daughter. Id. Plaintiff testified her mother works full-time and her grandmother "gets a Social Security check" that Plaintiff believed was for "retirement." (R. at 41-42). Plaintiff testified her only source of personal income is "TANIFF" (Temporary Assistance for Needy Families). (R. at 42).

Plaintiff testified she has not worked since August 1, 2014. (R. at 43). Plaintiff testified she stopped working as a result of her scoliosis. Id. Plaintiff then testified that she was confused about the ALJ's question and stated that she has not worked since "2011". (R. at 44). The ALJ questioned Plaintiff about a "gig in North Carolina" she had told her therapist about according to the medical evidence and a "new job" that "has been cutting into" Plaintiff's sleep. Id. Plaintiff stated that she "didn't have a gig in North Carolina and actually not my job" and stated that she was taking her sister on her paper route. Id. Plaintiff further stated she went to a show with her friend but "didn't get paid for that." Id. Plaintiff testified her last official job was as a cashier for "Bath and Body Works." (R. at 46). Plaintiff testified she performed some work as a babysitter in 2014. (R. at 47).

Plaintiff also testified she worked for "Sport and Health" and "Global Receivable Solutions" where she worked in a "call center", answering phones and providing customer service. (R. at 47-48). Plaintiff testified she had other babysitting jobs in 2008 and worked as a cashier at 711 in 2007. (R. at 48-49). Plaintiff further testified she worked at a "Kia Dealership" in 2006 as a "receptionist/cashier." (R. at 49).

Plaintiff testified she is prevented from working because of her "back pain from top to bottom due to my conflicts and scoliosis." (R. at 51). Plaintiff testified her scoliosis causes her "left leg to hurt because" her "right should sits higher than the other side because of the hypophysis" which prevents her from reaching or bending and causes pain when sitting or standing for long periods. Id. Plaintiff testified there is nothing that helps alleviate her pain and she is not prescribed any medication for the pain. (R. at 51-52). Plaintiff testified she does take "Hydroxyzine" for her "insomnia" to help her sleep. (R. at 52). Plaintiff testified she does not experience any side effects from her medication. Id. Regarding her mental health, Plaintiff testified she sees a social worker for behavioral health every two weeks. (R. at 52-53). Plaintiff testified she has appointments with her social worker every two weeks to help with her depression. (R. at 53). Plaintiff testified she was previously prescribed medicine for her depression but was taken off of it because it was making her sick. Id.

When questioned by the ALJ regrading her concentration and attention, Plaintiff testified she did not have any problems understanding information or instructions, making decisions, or relating to others. (R. at 54).

Plaintiff testified she can only lift ten pounds due to the pressure lifting weight causes on her back. (R. at 54-55). Plaintiff testified she can walk for approximately "five minutes" before feeling the need to stop. (R. at 55). Plaintiff testified she can stand for about ten minutes before

needing to sit down. Id. Plaintiff testified she can sit for about fifteen minutes before needing to stand up or adjust to be more comfortable. Id.

Regarding her daily activities, Plaintiff testified that she wakes up around "6:15", gets her daughter up and dressed for school, and drives her daughter to the bus stop before coming back home. Id. Plaintiff testified she then showers, eats, and watches TV. Id. Plaintiff testified if she is in "a lot of pain from" her back she will attempt to lay down and "sometimes it is like laying down for hours until it is time for" her to go pick up her daughter off the bus at 3:00. (R. at 55-56). When her daughter gets home, Plaintiff makes sure she is "fed and she watches TV for a little bit and reads and she gets ready for bed at 7:30 after she has her bath at 7:00." (R. at 56). Plaintiff testified she typically goes to bed when her daughter does. Id. Plaintiff testified she does not have any problems taking care of her personal needs. Id. Plaintiff testified her scoliosis and back pain prevents her from performing any household chores such as cleaning and cooking. Id. Plaintiff testified she does go to the "laundromat" to do her laundry "once every two weeks." (R. at 56-57). Plaintiff testified she goes grocery shopping once a month at Wal-Mart. (R. at 57). Plaintiff testified she will take her daughter to the movies every once in a while but does not go to the mall for shopping due to the pain caused by extended walking. Id. Plaintiff testified her only hobby is singing. Id.

Plaintiff's attorney asked her where she spends most of her day in the house. (R. at 58). Plaintiff stated she spends most of her day in her bedroom laying down. Id. Plaintiff testified she is laying down most of the day because of the pain in her back and shoulder. Id. Plaintiff testified some days "are worse than others where" the pain can bring her to tears. (R. at 59). Plaintiff testified those days occur typically twice a week. Id. Plaintiff testified that on the worst days, she spends nearly the entire day in bed. Id. Plaintiff testified her grandmother normally helps care for

her five year old daughter on such days. Id. Plaintiff testified her right shoulder sits higher than her left because of her "hypophysis." (R. at 59-60). Plaintiff described her back pain as "bad from the top to bottom because" of her "scoliosis from where" her spine curves and she is now experiencing pain from the hypophysis as a result of her shoulder issues. (R. at 60). Plaintiff testified that if she was working and experiencing one of her worst days, she would be "calling out of work" and testified she has "passed out because of the pain in" her back. (R. at 60-61).

Plaintiff then described her depression and anxiety. Plaintiff testified she does not want to "get out of bed and do anything or go anywhere or even interact with my daughter at all and it is getting a little better than what it was but I still have some of those days." (R. at 61). Plaintiff testified that she goes to the laundromat with her sister. (R. at 61). Plaintiff testified that after getting back from the laundromat, the pain in her back forces her to lay down. Id.

**D.    Vocational Evidence**

Also testifying at the hearing was Ruth Fast, a vocational expert. (R. at 62). Ms. Fast characterized Plaintiff's past work as follows:

> A: Yes. Customer service representative. Code 249.362-026. Sedentary, SVP 4. Receptionist. 237.367-038. Sedentary, SVP 2. Cashier II. 211.462.010. Light, SVP 3. Babysitter. 301.677-010. As generally performed medium in exertion. SVP 3.

(R. at 63-64).

With regards to Plaintiff's ability to return to her prior work, Ms. Fast gave the following responses to the ALJ's hypothetical:

> Q:    All right. Then I would like for you to assume a hypothetical individual of the claimant's age and education with the past jobs that you have described. I want you to further assume that this individual is limited to light exertional level with the additional limitations that the individual can frequently climb ramps and stairs, occasionally climb ladders, ropes or scaffolds, frequently balance, frequently stoop, kneel, crouch and crawl, can never work at unprotected heights and never around moving mechanical parts.

> Can the hypothetical individual perform any of the past jobs you have described, as actually performed or generally performed?
>
> A:     Yes. The individual could perform the front desk receptionist position, customer Service representative position, and the cashier.

(R. at 64).

Incorporating the above hypothetical, the ALJ then questioned Ms. Fast regarding Plaintiff's ability to perform other work at varying exertional but unskilled levels as follows:

> Q:     And can the hypothetical individual perform any other work and if so could you give me a few examples with numbers of jobs please?
>
> A:     Yes. At light the individual - - examples include cafeteria attendant. Code 311.677-010. That is light, SVP 2. Nationally approximately 100,000. Another example is fast food worker. Code 311.472-010. Light, SVP 2. There are over 1,000,000 jobs. The estimate is 1,000,500 approximately. Another example children's attendant. Light, SVP 2. Code 349.677-018. Nationally approximately 23,000.

(R. at 65-66). Next, the ALJ added to the hypothetical that the "individual can occasionally kneel, occasionally crawl and would be limited to performing simple and routine tasks." (R. at 66). Ms. Fast responded that this would not change her response to hypo one. Id. Finally, the ALJ added that the individual "can frequently push and pull with the lower left extremity, occasionally reach overhead with the right upper extremity" and Ms. Fast responded that if "the right upper extremity is dominant, I would not offer children's attendant." Id.

Plaintiff's attorney then questioned the vocational expert. (R. at 67). Plaintiff questioned Ms. Fast as follows:

> Q:     For hypothetical number four if a hypothetical claimant due to any reason but in this particular case due to pain issues with her back were absent from work two or more days per month and they maintained that as a consistent limitation will they be able to maintain employment in a competitive environment?
>
> A:     No jobs.
>
> Q:     And for hypothetical number five. For the same reasons or again for any other reason. If a hypothetical claimant were consistently off task 15 percent or more of

a typical work day would they be able to maintain employment in a competitive environment?

A:    No jobs.

(R. at 67).

## IV.    THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work…'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A) (2006). The Social Security Administration uses the following five-step

sequential evaluation process to determine if a claimant is disabled:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

[Before the fourth step, the residual functioning capacity of the claimant is evaluated based "on all the relevant medical and other evidence in your case record . . ." 20 C.F.R. §§ 404.1520; 416.920 (2011).]

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520; 416.920 (2011). If the claimant is determined to be disabled or not disabled at one of the five steps, the process does not proceed to the next step. Id.

## V.   ADMINISTRATIVE LAW JUDGE'S DECISION

Utilizing the five-step sequential evaluation process described above, the ALJ made the following findings:

1.   **The claimant meets the insured status requirements of the Social Security Act through September 30, 2016.**

2.   **The claimant has not engaged in substantial gainful activity since December 4, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**

3.   **The claimant has the following severe impairments: dextroscoliosis with kyphosis and depression (20 CFR 404.1520(c) and 416.920(c)).**

4.   **The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

5.   **After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can frequently push or pull with the left lower extremity, and occasionally reach overhead with the right upper extremity; she can frequently climb ramps or stairs, balance, stoop, or crouch, and occasionally climb ladders, ropes, or scaffolds, kneel, or crawl; she can never work at unprotected heights and never around moving mechanical parts; and she is limited to performing simple, routine tasks.**

6.   **The claimant is capable of performing past relevant work as a cashier. This work does not require the performance of work-**

related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from December 4, 2012, through the date of this decision (20 CFR 404.1520(1) and 416.920(1)).

(R. at 12-22).

## VI.   <u>DISCUSSION</u>

### A.   Standard of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1968)). However, "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment…if the decision is supported by substantial evidence." <u>Hays</u>, 907 F.2d at 1456 (citing <u>Laws</u>, 368 F.2d at 642; <u>Snyder v. Ribicoff</u>, 307 F.2d 518, 529 (4th Cir. 1962)). In reviewing the Commissioner's decision, the reviewing court must also consider whether the ALJ applied the proper standards of law: "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987).

**B.      Contentions of the Parties**

      **1.      Plaintiff's Motion for Summary Judgment**

Plaintiff, in her Motion for Summary Judgment ("Brief" at ECF No. 25), states her "exact issue is I have severe pain from my scoliosis and kyphosis that limits me physically to what I can and cannot do." (ECF No. 25 at 1). Plaintiff states she "may have degenerative spine disease which I plan to look into further at my March 5th appointment with an orthopedic." Id. Plaintiff states she cannot "lift anything heavy, and I am forced to change position frequently due to the chronic pain in my lower back." Id. Plaintiff states this case "has been ongoing for many years due to denial after denial." Id. Plaintiff states her "condition has gotten worse as I got older." Id. Plaintiff states she cannot perform any substantial gainful activity contrary to the opinion of the "disability expert." Id.

Plaintiff contends she first found out she had scoliosis in elementary school. Id. Plaintiff states this became "more of a problem as I got older. I've had x-rays done for my back that proved I had scoliosis." Id. Plaintiff contends she found out she has kyphosis as well in 2013 after she had her daughter. Id. Plaintiff contends the "Virginia Spine intervention" have tried "pain medication and muscle relaxer which neither worked" for her back pain. Id.

Plaintiff alleges she "was never given the test to see if I'm able to do substantial gainful work ever since I've opened this case" and does not understand why. Id. at 2. Plaintiff states she has a "doctors[sic] appointment on March 5th about" her scoliosis and asks "for more time to provide those results and maybe get more medical evidence." Id. at 3.

      **2.      Defendant's Motion for Summary Judgment**

Defendant, in their Memorandum in Support (ECF No. 29) of their Motion for Summary Judgment (ECF No. 28), asserts first, that the "ALJ captured all of Plaintiff's credibly established

functional limitations in the RFC Finding." ("Def's Br." ECF No. 29 at 7). Next, Defendant argues that "substantial evidence supports the ALJ's Step Four determination that Plaintiff could perform her past relevant work as a cashier." (Def's Br. at 11). Defendant argues the ALJ properly found that "Plaintiff was not disabled because she was capable of performing her past relevant work as a cashier, a job that did not require the performance of work-related activities precluded by Plaintiff's RFC." Id. at 12. As such, Defendant asks the Court to affirm the decision of the ALJ because it is supported by substantial evidence. Id. at 13.

**C.    Analysis of the Administrative Law Judge's Decision**

**1.    The undersigned finds that substantial evidence supported the AlJ's assessment of Plaintiff's functional limitations in the RFC finding.**

First, the undersigned would note "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment…if the decision is supported by substantial evidence." Hays, 907 F.2d at 1456 (citing Laws, 368 F.2d at 642; Snyder v. Ribicoff, 307 F.2d 518, 529 (4th Cir. 1962)). Here, the undersigned is of the opinion that the ALJ properly captured all of Plaintiff's functional limitations and appropriately afforded weight to the testimony and medical evidence submitted in the record. The ALJ determined that Plaintiff could perform light work, with the limitation of no more than frequent pushing or pulling with her left lower extremity; occasional overhead reaching with her right upper extremity; frequent balancing, stooping, crouching, or climbing ramps and stairs; occasional climbing, kneeling, crawling, or climbing ladders, ropes, or scaffolds, never working at unprotected heights and around moving mechanical parts, and no more than simple, routine tasks. (R. at 15).

The ALJ made this finding after appropriately weighing and considering all of Plaintiff's severe impairments and their impact on her functional capacity, including Plaintiff's scoliosis,

kyphosis, and depression. The ALJ made proper and frequent citations to the record and medical evidence to support her finding. (R. at 15-19). The ALJ properly described in detail the weight given to the evidence submitted by the various doctors that have evaluated Plaintiff over the past several years. (*See* R. at 17; R. at 17-19). The ALJ noted Plaintiff's testimony that she can lift up to 10 pounds; she can walk for five minutes at a time, stand for 10 minutes, and sit for 15 minutes; that Plaintiff has no difficulties attending doctor's appointments, shopping, driving, engaging in social activities, living with others, watching television, dressing, bathing, or caring for her child. (R. at 15). Further, the ALJ noted correctly and consistent with the medical record as a whole, that while Plaintiff's pain is constant and consistent during pain management visits, treatment providers only occasionally note back tenderness or spasms during physical examinations. (R. at 16). Further, the ALJ properly considered Plaintiff's depression in assessing her ability to perform simple, routine tasks. Accordingly, the undersigned finds the ALJ's RFC finding was proper and supported by substantial evidence.

2. **The undersigned finds that substantial evidence supports the ALJ's Step Four determination that Plaintiff could perform her past relevant work as a cashier.**

The ALJ in this matter found at Step Four that Plaintiff was not disabled because she was capable of performing her past relevant work as a cashier, a job that did not require the performance of work-related activities precluded by Plaintiff's RFC. (R. at 19). The ALJ properly considered the testimony of the vocational expert, the medical evidence as a whole, and compared Plaintiff's RFC with the physical and mental demands of Plaintiff's past relevant work in reaching her conclusion that Plaintiff was able to perform her past relevant work as a cashier as actually and generally performed. (R. at 19-20). In doing so, the ALJ properly took into account Plaintiff's own testimony describing her past relevant work in which she lifted ten pounds or less and worked as a cashier accepting money from customers. The ALJ then properly applied the functional and

exertional limitations as set forth above in her RFC assessment to find that Plaintiff is able to perform her past relevant work as a cashier. Accordingly, the undersigned finds the ALJ's decision is supported by substantial evidence.

## VII.    <u>RECOMMENDATION</u>

For the reasons herein stated, the undersigned finds that the Commissioner's decision denying the Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income is supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 25) be **DENIED**, Defendant's Motion for Summary Judgment (ECF No. 28) be **GRANTED**, and the decision of the Commissioner be affirmed, and this case be **DISMISSED WITH PREJUDICE**.

Any party shall have fourteen days from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**.  A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Court **DIRECTS** the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record and to the *pro se* Plaintiff by certified mail, return receipt requested, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. Additionally, as this report and recommendation concludes the referral from the District Court, the Clerk is further **DIRECTED** to terminate the magistrate judge's association with this case.

Respectfully submitted this 10th day of July, 2020

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE